EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Robinson Rodríguez Medina y Ivis Romeu Palermo<br><br>        Demandantes-peticionarios<br><br>              vs.<br><br> Eleuterio Pérez Torres, Felicita Ortiz Ramírez y otros<br><br>        Demandados-recurridos | Certiorari<br><br>2005 TSPR 36<br><br>163 DPR \_\_\_\_ |

Número del Caso: CC-2003-104

Fecha: 30 de marzo de 2005

Tribunal de Apelaciones:

      Circuito Regional IV de Aguadilla y Mayagüez

Juez Ponente:

      Panel integrado por su Presidenta, la Juez López Vilanova, el Juez Córdova Arone y la Juez Feliciano Acevedo

Abogado de la Parte Recurrida:

                  Lcdo. José Miguel Toro Iturrino

Abogado de la Parte Peticionaria:

                  Lcdo. Nelson Vélez Lugo

Materia: Acción Civil Colindancias

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Robinson Rodríguez Medina y
Ivis Romeu Palermo

    Demandantes-peticionarios

       vs.               CC-2003-104    CERTIORARI

Eleuterio Pérez Torres,
Felicita Ortiz Ramírez y otros

    Demandados-recurridos

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 30 de marzo de 2005

El Sr. Robinson Rodríguez Medina era propietario de dos terrenos colindantes localizados en el barrio La Haya en el municipio de Lajas. Rodríguez Medina adquirió estos terrenos mediante la compra de las participaciones hereditarias de la sucesión de su padre, el Sr. Efraín Rodríguez Destres, por la suma total de $56,000. La referida compra se hizo mediante la escritura número 22 de Compraventa de Participación de Herencia otorgada en Lajas ante el notario Luis A. Torres Iturrino, el 20 de abril de 1994.

En uno de estos predios de terreno enclava una estructura que Rodríguez Medina utilizaba

para operar un negocio de supermercado.[1] La descripción que consta en el Registro de la Propiedad de dicho terreno es la siguiente:

> Urbana: Porción de terreno localizado en el Barrio Lajas del término municipal de Lajas, Puerto Rico, con una cabida superficial de quinientos ochenta y nueve punto cuarenta y siete metros cuadrados (589.47 mc). Colinda por el Norte en veintitrés punto ochenta y ocho metros con terrenos de Hipólita Rodríguez Santiago, por el Sur en treinta y seis punto cero seis metros con el remanente de la finca principal, por el Este en catorce punto treinta y cinco metros con el remanente de la finca principal y por el Oeste en veintisiete punto setenta y dos metros con un camino.
>
> Enclava una estructura de concreto dedicada a negocio.[2]

Rodríguez Medina le vendió al Sr. Eleuterio Pérez Torres, el 30 de junio de 1998, el terreno antes descrito. Inicialmente, se hizo un contrato privado escrito a mano en el que se expresaba que se vendía dicho terreno con una cabida aproximada de seiscientos (600) metros cuadrados a Pérez Torres. El precio de venta fijado en dicho contrato privado fue de $76, 769.00, de los cuales en ese momento se anticipó la cantidad de $5,000.00 con el acuerdo de que el

---

[1] Es <u>importante señalar</u> que para evitar que las personas que iban al supermercado se estacionarán en el otro terreno perteneciente a Rodríguez Medina, <u>éste construyó una verja cerca de la colindancia de ambos terrenos</u>.

[2] Este terreno fue adquirido por el padre del peticionario, el Sr. Efraín Rodríguez Destres, mediante escritura número 29 sobre segregación y compraventa otorgada el 11 de septiembre de 1979 ante el notario Arcadio Toro Goyco. Los solares fueron lotificados por la Administración de Reglamentos y Permisos el 12 de julio de 1979 en el caso 79-57-0304 MPL.

resto sería pagado dentro de un período de noventa (90) días a partir del día en que se firmó dicho contrato.

Dicho negocio jurídico fue <u>formalizado</u> el 17 de agosto de 1998, mediante la escritura de compraventa número 692, otorgada ante el notario Luis M. Olivares. <u>El predio se describió con sus linderos establecidos y como un solar con una cabida de 589.47 metros cuadrados; ello conforme a su inscripción en el Registro de la Propiedad</u>. Asimismo, en la escritura de compraventa se estipuló el precio de $70,000 por la venta del terreno.[3]

Pérez Torres arrendó dicho terreno al Sr. Leoncio Irizarry y a su esposa, la Sra. Carmen Martínez. Irizarry y su esposa comenzaron a operar, en la estructura enclavada en el mencionado terreno, un negocio de colmado conocido como "La Haya Food Market." Éstos, adicionalmente, construyeron una estructura en forma de tarima y otra en forma de kiosco para la venta de pinchos en la colindancia con el terreno propiedad de Rodríguez Medina. Al enterarse de la construcción de estas nuevas estructuras Rodríguez Medina le solicitó, tanto a Irizarry como a Pérez Torres, que removieran las mismas ya que éstas se encontraban en el terreno todavía perteneciente a él. No obstante la solicitud de Rodríguez Medina, las estructuras no fueron removidas.

---

[3] Del expediente del caso ni de las determinaciones de hecho del Tribunal de Primera Instancia surgen las razones por las que el precio convenido en la escritura de compraventa fue menor a la estipulada en el contrato privado suscrito por las partes.

Ante esta situación, el 16 de agosto de 2001, Robinson Rodríguez Medina, su esposa Ivis Romeu Palerm y la Sociedad Legal de Gananciales compuesta por ambos presentaron una demanda ante el Tribunal de Primera Instancia, Sala Superior de Mayagüez, contra Eleuterio Pérez Torres, su esposa Felicita Ortiz Ramírez y la Sociedad Legal de Gananciales compuesta por ambos; y contra Leoncio Irizarry, su esposa Carmen Martínez y la Sociedad Legal de Gananciales compuesta por ambos.

Rodríguez Medina y su esposa alegaron en la demanda que eran propietarios del terreno que colindaba con el vendido por ellos mismos a Pérez Torres. Además, alegaron que Pérez Torres tenía en su solar una estructura dedicada a negocio, la cual arrendaron al Sr. Leoncio Irizarry y a su esposa Carmen Martínez. Asimismo, alegaron que Irizarry y su esposa construyeron una estructura en forma de tarima y otra en forma de kiosco para la venta de pinchos, con la anuencia de Pérez Torres, en una parte del terreno que es propiedad de los demandantes, habiendo así invadido la propiedad de éstos y violado su derecho a disfrutar de la misma.

Los demandantes alegaron, además, haber realizado gestiones extrajudiciales para que los codemandados removieran dichas estructuras, resultando las mismas infructuosas. De este modo, Rodríguez Medina y su esposa solicitaron del foro de instancia que ordenara a los codemandados la remoción de las estructuras construidas en su

propiedad y condenara a éstos al pago de dos mil dólares en concepto de honorarios de abogado.

Los codemandados contestaron la demanda y reconvencionaron. En la contestación a la demanda aceptaron la construcción de las estructuras en controversia, pero, negaron que éstas fueran construidas en la propiedad de los demandantes; en la reconvención alegaron que sufrieron angustias mentales por las actuaciones intencionales o culposas de Rodríguez Medina, quien había hostigado y perseguido a los codemandados acusándolos de haberle robado terreno, y había radicado querellas infundadas, con el propósito de perturbar a los codemandados en el uso y disfrute de su propiedad. De esta forma, solicitaron del foro de instancia que condenara a los demandantes al pago de la suma de $10,000 en daños y perjuicios.

Luego de varios incidentes procesales, el 7 de marzo de 2002, las partes presentaron ante el Tribunal de Primera Instancia, el informe de conferencia con antelación al juicio. En dicho informe los demandantes alegaron que cuando se suscribió el contrato privado, ellos le indicaron a Pérez Torres: que no recordaban exactamente la cabida del solar, pero acordaron que, tan pronto firmaran las escrituras, medirían y fijarían las colindancias conforme surgía de la escritura número 29 sobre segregación y compraventa otorgada el 11 de septiembre de 1979. Asimismo, alegaron que, aunque los codemandados sabían cuales eran los puntos de colindancias establecidos, ya que se habían hecho las medidas

del terreno por un agrimensor, estos construyeron la tarima y el kiosco en terreno que le pertenece a los demandantes.

Por su parte, los codemandados alegaron que la venta fue por un área total de terreno que aparecía cercada. Que como el peticionario les hizo creer que la propiedad vendida era el lugar debidamente cercado, y al ser una venta por precio alzado, esa porción de terreno era parte del contrato de compraventa, por lo que le pertenece al comprador, el Sr. Pérez Torres.

Así las cosas, el 21 de junio de 2002, se celebró juicio en su fondo en el que declararon como testigos el demandante Rodríguez Medina, el agrimensor Rafael Rivera y el codemandado Pérez. Finalmente, el tribunal de instancia dictó sentencia declarando <u>con</u> lugar la demanda, ordenando a la parte demandada hacer entrega a los demandantes de 141.77 metros cuadrados de terreno que tenían en su poder.

El foro de instancia fundamentó su determinación en que cuando se otorgó el contrato privado, las partes habían acordado que tan pronto se firmaran las escrituras, medirían y fijarían las colindancias conforme surgía de la escritura que evidenciaba su titularidad[4], por lo que el terreno adquirido por Pérez Torres tenía claramente establecidos sus linderos y sus puntos en forma precisa utilizando instrumentos de alta precisión, y estos estaban mencionados hasta las centésimas de metros en la escritura de

---

[4] El Tribunal de Primera Instancia en sus determinaciones de hechos no especifica a que escritura se refiere.

compraventa. Determinó, además, que Pérez Medina al contratar un agrimensor para que midiera el terreno y colocara los puntos correspondientes, demostró que su intención al contratar era que los linderos establecidos eran de acuerdo a la cabida expresada en la escritura de compraventa, y no hasta la verja como éste había alegado. De esta manera, determinó el referido foro que el área de terreno de 141.77 metros cuadrados reclamada por el demandante era propiedad de éste. Por otro lado, declaró No Ha Lugar la reconvención presentada por los codemandados.

Inconformes con la referida sentencia, el 26 de septiembre de 2002, los codemandados presentaron recurso de apelación ante el Tribunal de Apelaciones alegando, en síntesis, que había errado el tribunal de instancia al declarar con lugar la demanda porque la parte demandante no tenía derecho a recobrar el exceso de terreno que resultó en el solar adquirido por los demandados toda vez que el contrato de compraventa efectuado por las partes fue por precio alzado y no por unidad de medida. Asimismo, alegaron que había errado el referido foro en su análisis de la prueba testifical.[5]

El Tribunal de Apelaciones emitió sentencia, el 27 de noviembre de 2002, mediante la cual revocó la determinación del Tribunal de Primera Instancia, expresando que la venta

---

[5] Ello no obstante, los apelantes posteriormente le informaron al Tribunal de Apelaciones que entendían que no era necesario, para resolver el recurso, una exposición narrativa de la prueba, a la cual renunciaron.

original se hizo a precio alzado, y por tanto el vendedor estaba obligado a entregar todo lo comprendido dentro de los linderos, aunque hubiera más superficie dentro del terreno de lo que se expresó en el contrato.

El 13 de diciembre de 2002, los demandantes presentaron moción de reconsideración, alegando que el terreno fue vendido por acuerdo de las partes de conformidad con la descripción precisa contenida en la escritura y en el Registro de la Propiedad, la cual establecía claramente los linderos donde estaba comprendido el predio objeto de la compraventa. El Tribunal de Apelaciones denegó la misma.

Inconforme con la determinación, los codemandantes recurrieron ante este Tribunal --vía certiorari-- imputándole al foro apelativo intermedio, en síntesis y en lo pertinente, haber errado al aplicar, de forma incorrecta, la doctrina de precio alzado toda vez que la venta del predio en controversia se hizo por los linderos y la obligación del vendedor era entregarle todo lo comprendido dentro de ellos.[6]

Expedimos el recurso. Contando con la comparecencia de todas las partes, y estando en posición de resolver el mismo, procederemos a así hacerlo.

---

[6] El peticionario también señaló como segundo error el que el Tribunal de Apelaciones incidió al revocar la determinación de No Ha Lugar dada por el Tribunal de Primera Instancia a la reconvención de los codemandados. No obstante, la discusión de este señalamiento de error resulta innecesaria toda vez que esa determinación del Tribunal de Primera Instancia advino final y firme ya que los codemandados en este caso no solicitaron la revisión de esa determinación en su recurso de apelación presentado ante el Tribunal de Apelaciones.

I

La venta por precio alzado es aquella en que el comprador se obliga a pagar determinada cantidad de dinero por toda la cabida de un inmueble que resulte existir dentro de unos linderos ya establecidos en el contrato. Véase: Soc. de Gananciales v. Srio. de Justicia, 137 D.P.R. 70 (1994); Ruidíaz Barrios v. Salas, 103 D.P.R. 922 (1975); José Ramón Vélez Torres, Curso de Derecho Civil, Derecho de Contratos, Tomo IV, Vol. II, Univ. Interamericana de Puerto Rico, 1990, pág. 172. A ella se refiere el Artículo 1360 del Código Civil, 31 L.P.R.A. sec. 3820, que dispone:

> En la venta de un inmueble, hecha por precio alzado y no a razón de un tanto por unidad de medida o número, no tendrá lugar el aumento o disminución del mismo aunque resulte mayor o menor cabido o números de los expresados en el contrato.
>
> Esto mismo tendrá lugar cuando sean dos o más fincas vendidas por un sólo precio; pero si además de expresarse los linderos, indispensables en toda enajenación de inmuebles, se designaren en el contrato su cabida o número, el vendedor estará obligado a entregar todo lo que se comprenda dentro de los mismos linderos, aun cuando exceda de la cabida o número expresados en el contrato; y si no pudiere, sufrirá una disminución en el precio proporcional a lo que falte de cabida o número, a no ser que el contrato quede anulado por no conformarse el comprador con que se deje de entregar lo que se estipuló. (énfasis suplido).

En Soc. de Gananciales v. Secretario de Justicia, ante, expresamos que en "la venta por precio alzado, el vendedor tiene que entregar la cosa cierta, que es la finca individualizada mediante la descripción de sus linderos. Todo lo que estos comprendan ha de ser entregado a cambio del

precio convenido. [Citas omitidas.] El fundamento son los linderos, no un tanto por unidad de medida. Cualquier diferencia entre la cabida expresada y la que efectivamente tiene la finca, no da margen a reclamación o indemnización alguna." (énfasis suplido).

De igual forma, José Puig Brutau, en Fundamentos de Derecho Civil, 2da ed. rev., Barcelona, Ed. Bosch, Tomo II, Vol. 2, 1982, pág. 169, nos dice al respecto:

> Por tanto, en las ventas a precio alzado hay que entregar la cosa cierta que es la finca individualizada mediante la designación de sus linderos. Todo lo que éstos comprendan ha de ser entregado a cambio del precio convenido. La circunstancia de que se haya hecho constar en el contrato la cabido o número, a pesar de que de ello no se haya hecho depender la cuantía del precio, no se puede repercutir en un aumento del mismo, aunque la cabida contenida dentro de los linderos sea superior a la que se hizo constar en el contrato; pero, en cambio, puede repercutir en una disminución del precio convenido si el vendedor no puede entregar todo lo comprendido dentro de los linderos de la finca vendida por un precio alzado, sin perjuicio de que, en semejante caso, el comprador prefiera desistir del contrato ante la imposibilidad de recibir la cosa en si integridad, si no le interesa recibirla con una rebaja proporcional del precio. (énfasis suplido).

Cónsono con lo anteriormente expuesto, si la compraventa de un bien inmueble se hace por precio alzado, el vendedor entregará todo lo que se comprenda entre los linderos, aun cuando exceda la cabida o número expresados en el contrato. Conforme a ello, cuando estamos ante una venta a precio alzado lo importante es determinar cuales eran los linderos establecidos por las partes al momento de suscribir el contrato de compraventa.

II

Con este trasfondo doctrinal en mente, analizamos los hechos ante nos. En el presente caso, como correctamente señaló el Tribunal de Apelaciones, nos encontramos ante una venta por precio alzado, ya que en efecto, ésta no se hizo a razón de un tanto por unidad de medida. Se pactó una cantidad por el terreno completo.

Ahora bien, la venta por precio alzado, como indicáramos, se hace por los linderos establecidos en el contrato de compraventa. En este caso, acorde con las determinaciones de hecho del Tribunal de Primera Instancia, los linderos se establecieron claramente en la escritura de compraventa del terreno en controversia, suscrita por ambas partes. Hecha la venta a precio alzado, el comprador Pérez Torres tenía derecho a toda la superficie de terreno dentro de los linderos establecidos en el contrato, aunque dicha superficie fuera mayor a la expresada en la escritura, pero no, a una superficie adicional que se extendiera fuera de dichos linderos.

A tono con lo anterior, en este caso, no se trata de que, al fijar los linderos, el terreno vendido resultó tener una superficie en metros cuadrados mayor que la cabida expresada en la escritura. Se trata de que Pérez Torres tenía en su posesión una superficie de 141.77 metros cuadrados que se extendía fuera de los linderos especificados en la escritura de compraventa. Por tanto, entendemos, como lo hizo el Tribunal de Primera Instancia, que era la intención clara

de los contratantes vender una superficie de terreno específica, tal y como surge de la escritura.

En ese sentido, en cuanto a la posible intención de las partes, el foro de instancia encontró probado que en el momento en que se suscribió el contrato privado Rodríguez Medina le indicó a Pérez Torres que no recordaba exactamente la cabida del solar. No obstante, las partes acordaron que, tan pronto firmaran las escrituras, medirían y fijarían las colindancias conforme surgía de la escritura que evidenciaba su titularidad.

La posición de los recurridos es que el contrato de compraventa fue por un área total de terreno que aparecía cercada y que el peticionario les hizo creer que la propiedad vendida era el lugar debidamente cercado. Sin embargo, el Tribunal de Primera Instancia encontró probado el hecho de que el propio codemandado, Pérez Torres, contrató después de la venta al agrimensor, Sr. Rafael Rivera --el cual declaró en el juicio-- para que le midiera el solar objeto de controversia, y colocara los puntos correspondientes por el lugar donde establece la escritura de compraventa.[7] Conforme a las determinaciones de hecho del foro de instancia, es forzoso concluir que, al momento de suscribir el contrato,

---

[7] Es norma en materia de interpretación de los contratos que para juzgar la intención de los contratantes "deberá atenderse principalmente a los actos de éstos, coetáneos y posteriores al contrato." Artículo 1234 del Código Civil, 31 L.P.R.A. sec. 3472. De igual manera "cuando los términos de un contrato son claros y libres de ambigüedades, se estará al sentido literal de sus cláusulas." Artículo 1233 del Código Civil, 31 L.P.R.A. sec. 3471.

las partes establecieron los linderos de acuerdo a la descripción y a la cabida del terreno contenida en la escritura de compraventa. Igualmente claro resulta ser que la porción de terreno, aquí en controversia, no se encontraba dentro de los linderos establecidos en dicha escritura.

En virtud de lo antes expuesto, el foro apelativo intermedio erró al ignorar por completo las determinaciones de hecho del Tribunal de Primera Instancia, ya que de las mismas surgía que, al momento de suscribir el contrato de compraventa, los linderos del terreno vendido a precio alzado estaban claramente establecidos por las partes.[8] A esos efectos, concluimos que los 141.77 metros cuadrados de terreno en controversia, le pertenecen a Rodríguez Medina y a su esposa Ivis Romeu Palermo, por lo que los recurridos deben hacerle entrega del mismo.[9]

III

Por los fundamentos anteriormente expuestos, procede expedir el auto de *certiorari* y dictar Sentencia revocatoria de la emitida por el Tribunal de Apelaciones y, en

---

[8] Como sabemos es doctrina reiterada que los tribunales apelativos no deben intervenir con la apreciación de la prueba que realizan los tribunales de instancia en ausencia de pasión, perjuicio, error manifiesto o parcialidad, Arguello López v. Arguello García, res. el 31 de agosto de 2001, 2001 T.S.P.R. 124; Trinidad García v. Chade, res. el 18 de enero de 2001, 2001 T.S.P.R. 7.

[9] Este caso representa un claro ejemplo de la máxima que postula que son los hechos los que determinan el derecho, no a la inversa. Andino v. Topeka, Inc., 142 D.P.R. 933, 938 (1997); Pueblo v. Rexach Benítez, 130 D.P.R. 273, 310 (1992).

consecuencia, confirmatoria de la emitida por el Tribunal de Primera Instancia.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Robinson Rodríguez Medina y
Ivis Romeu Palermo

    Demandantes-peticionarios

       vs.              CC-2003-104     CERTIORARI

Eleuterio Pérez Torres,
Felicita Ortiz Ramírez y otros

    Demandados-recurridos

SENTENCIA

San Juan, Puerto Rico, a 30 de marzo de 2005

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se dicta Sentencia revocatoria de la emitida por el Tribunal de Apelaciones y confirmatoria de la emitida por el Tribunal de Primera Instancia.

Así lo pronunció, manda el Tribunal y certifica al Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre en el resultado sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo