*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Rivera Pérez no intervino.

MILDRED VÉLEZ CORTÉS ET AL., demandantes y peticionarios, *v.* BAXTER HEALTHCARE CORPORATION OF PUERTO RICO ET AL., demandados y recurridos.

*Número:* CC-2003-964          *Resuelto:* 6 de diciembre de 2005

**I**

*Charles S. Hey Maestre* y *Luis Amauri Suárez Zayas*, abogados de la parte peticionaria; *José A. Silva Cofresí, Pedro J. Manzano Yates* y *Carlos A. Padilla Vélez*, abogados de la parte recurrida.

## RESOLUCIÓN

Atendida la Segunda Moción de Reconsideración presentada por la parte recurrida, *se provee "no ha lugar". Aténgase a lo resuelto.*

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada Señora Rodríguez Rodríguez emitió un voto disidente, al cual se unió el Juez Presidente Señor Hernández Denton. El Juez Asociado Señor Rivera Pérez emitió, en etapa de reconsideración, un voto particular.

(*Fdo.*) Aida Ileana Oquendo Graulau
*Secretaria del Tribunal Supremo*

— O —

Voto disidente emitido por la Juez Asociada Señora Rodríguez Rodríguez, al cual se une el Juez Presidente Señor Hernández Denton.

Hoy, una mayoría de este Tribunal se niega a revisar la sentencia que dictara en el caso de epígrafe el 30 de junio de 2005. En dicha sentencia, el Tribunal concluyó que el cierre de la planta de manufactura de la compañía Baxter Healthcare Corporation of Puerto Rico, Inc. (Baxter) en diciembre de 1998, sita en Carolina, no fue un verdadero cierre de acuerdo con lo dispuesto en el Art. 2 de la Ley

Núm. 80 de 30 de mayo de 1976, según enmendada (Ley Núm. 80), 29 L.P.R.A. sec. 185b.[1] De la sentencia dictada se colige que el Tribunal estima que dicho "cierre" fue más que nada un subterfugio para transferir las operaciones de Carolina a las plantas operadas por Baxter en Jayuya y en Aibonito, por lo que la cesantía de los demandantes, empleados que laboraban en Carolina, fue injustificada en violación a la Ley Núm. 80. El Tribunal dispuso en su sentencia que para que un cierre constituya justa causa para el despido de empleados, el patrono que lo efectúa tiene que descontinuar de forma absoluta las operaciones del negocio cerrado; en este caso, el Tribunal estimó que ello no ocurrió.

Disiento por estimar que la determinación del Tribunal es contraria a derecho y que no se sostiene a base del expediente que consta ante nosotros. Debemos expresar, además, que produce inquietud las potenciales repercusiones negativas que la decisión de este Tribunal pueda tener sobre el desarrollo industrial de Puerto Rico. Después de todo, el efecto real de la sentencia del Tribunal es catalogar como causa injustificada para la cesantía de empleados, aquella determinación de negocios dirigida a mantener a una compañía competitiva en un mercado globalizado que conlleve la consolidación de operaciones. La Ley Núm. 80 le reconoce a un patrono el derecho a despedir a sus empleados si la razón no es arbitraria; ello "se reconoce como una facultad o derecho que ostenta todo patrono en una sociedad moderna que se desarrolla y desenvuelve alrededor y a base de las fuerzas del libre mercado y del derecho de propiedad o de dirección empresarial". *Díaz v. Wyndham Hotel Corp.*, 155 D.P.R. 364, 377 (2001).

---

[1] El Art. 2 de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185b(d), dispone, en lo pertinente:

"Se entenderá por justa causa para el despido de un empleado de un establecimiento:

"(d) Cierre total, temporero o parcial de las operaciones del establecimiento."

Son varias las razones que abonan a la decisión de disentir, *todas ellas sustentadas por evidencia incontrovertible que consta en autos y obviadas en la sentencia dictada.*

*Primero*, en la planta operada por Baxter en Carolina *se elaboraban varios productos*, a saber: soluciones intravenosas tanto salinas como dextrosas ("IV Solutions"); las bolsas estériles utilizadas para el "IV Solution"; "galaxy", una premezcla de drogas y llenado estéril; tubos plásticos, unos para uso intravenoso y otros para uso renal, y los productos renales conocidos como "Continuous Ambulatory Periodonal Dyalisis" (CPD) y el Transureteral Irrigation (TUR).[2] *Segundo*, la planta que operaba Baxter en Carolina en efecto cerró operaciones en diciembre de 1998. Este proceso comenzó paulatinamente en diciembre de 1995 culminando en 1998. Como cuestión de hecho, el lugar donde ubicaba la planta de Baxter, hoy ubican entidades gubernamentales y privadas. *Tercero*, el cierre de dicha planta fue el resultado de una evaluación que llevó a cabo la compañía de sus operaciones mundialmente en 1993, con miras a mejorar su competitividad. Este análisis reveló que los costes de conversión[3] para operar las plantas de Baxter en Carolina y en Culebra eran de los más altos, al compararlos con otras plantas operadas por Baxter en otros países y en Puerto Rico. *Cuarto*, como resultado de ese análisis la compañía tomó la decisión de negocios de consolidar parte de la operación de manufactura que se efectuaba en Carolina con otras plantas sitas en Puerto Rico y Estados Unidos, cerrar instalaciones aquí en Puerto Rico y descontinuar la producción de algunos productos. Los planes de la compañía se anunciaron en octubre de 1995. *Quinto, para implementar la determinación corporativa, Baxter vendió su operación en Culebra, cerró el almacén*

---

[2] En la sentencia dictada no se hace referencia a todos los productos que se elaboran en la fábrica de Carolina.

[3] Los costes de conversión se computaban tomando en consideración la cantidad de dinero invertida en una planta frente al ingreso que se devenga de la operación de esa misma planta, además de considerar los costos de personal.

*que operaba en Sabana Gardens, Carolina, cerró paulati-
namente la planta de manufactura sita en Carolina, tras-
ladó parte de las operaciones de Carolina a plantas de Bax-
ter en Illinois (producción de la premezcla de drogas y
llenado estéril conocido como "galaxy"), en Carolina del
Norte (producción de los productos renales CAPD y TUR),
en Jayuya (elaboración de bolsas de soluciones intraveno-
sas —salinas y dextrosas— así como los tubos que forman
parte integral de las bolsas), y en Aibonito, donde transfirió
la manufactura de bolsas estériles, las cuales pasaban
luego a Jayuya para ser llenadas con las soluciones que allí
se producían. Finalmente, Baxter descontinuó la produc-
ción de los tubos renales que hasta entonces producía en
Carolina.*(⁴) *Sexto, los demandantes*, a través de su repre-
sentación legal, *aceptaron que en efecto el cierre de las ope-
raciones en Carolina obedeció a una determinación de ne-
gocios de la compañía para reducir costos, consolidar
operaciones y hacer la compañía más competitiva.*(⁵) *Sép-
timo, todos los empleados cesanteados por Baxter, inclu-
yendo los demandantes, recibieron ya una compensación
voluntaria de parte del patrono que ascendió a más de ocho
millones de dólares ($8,000,000)*; además, les retuvo su
plan médico por seis meses. Cada empleado recibió como
compensación un mes de sueldo, una semana por cada año
de servicio más el 10% de esa suma.(⁶)

Al sopesar los factores antes mencionados es precedente
concluir que en efecto Baxter cerró sus operaciones en Ca-
rolina como resultado de una legítima decisión de negocios,

---

(⁴) Sorprendentemente, la sentencia dictada por el Tribunal *no hace referencia
alguna* al cierre del almacén en Carolina, la venta de las operaciones Baxter en
Culebra, el traslado de la producción de varios productos a Carolina del Norte e
Illinois, ni a que se descontinuó la producción de tubos renales. Esto crea la errónea
impresión de que en la planta de Carolina solamente se producían los productos cuya
producción se trasladó a Jayuya y Aibonito. Al obviarse esta información, la senten-
cia no logra apurar adecuadamente en qué consistió el cierre de operaciones.

(⁵) Este hecho tampoco se mencionó en la sentencia.

(⁶) El hecho de que Baxter Healthcare Corporation of Puerto Rico, Inc. (Baxter)
pagase la compensación antes mencionada no se consideró, pues no se mencionó en
la sentencia dictada por el Tribunal.

por lo que la cesantía de los empleados que laboraban en la planta de Carolina no constituyó un despido injustificado. Somos del criterio que no se justifica la conclusión del Tribunal de que lo que ocurrió fue un traslado de operaciones en lugar de un cierre de operaciones. No podemos, por lo tanto, avalar con nuestro voto una decisión a todas luces errónea, pues es justa causa para el despido aquella vinculada a la ordenada marcha y normal funcionamiento de una empresa. *Díaz v. Wyndham Hotel Corp.*, ante.

Somos del criterio que la conclusión del Tribunal de que en este caso no hubo un verdadero cierre de operaciones sino meramente un traslado de las operaciones de Baxter de Carolina a Jayuya y Aibonito, no se ajusta a los hechos incontrovertidos de este caso, según se desprenden de su voluminoso expediente. Refleja, además, una incorrecta apreciación de cómo operan las fábricas de manufactura en Puerto Rico; así como también coarta el radio de acción disponible a las compañías multinacionales que operan en Puerto Rico que se vean obligadas a consolidar sus operaciones para poder competir en el mercado internacional. Ello, a nuestro juicio, perjudica la fuerza trabajadora puertorriqueña a largo plazo. Con su decisión el Tribunal, en realidad, penaliza a Baxter por haber trasladado parte de las operaciones de Carolina a otras plantas en Puerto Rico.

El principal error del Tribunal y del cual fluye su conclusión, estriba en no haber sopesado *todas las medidas que tomó Baxter en relación con sus operaciones en Puerto Rico* luego del análisis de costo-beneficio que ésta efectuó sobre sus operaciones a nivel mundial. Al obviar la totalidad de los factores antes mencionados, y repito: la venta de la operación en Culebra, el cierre del almacén en Carolina, el cese de la producción de tubos renales y el traslado de parte de las operaciones de Carolina a plantas en Illinois y Carolina del Norte —además de Jayuya y Aibonito— el Tribunal no logra apurar adecuadamente el alcance de la consolidación de las operaciones de Baxter en Puerto Rico y en qué consistió el cierre de la fábrica de Carolina.

Al centrar su discusión exclusivamente en el traslado de la producción de bolsas de soluciones intravenosas y sus tubos a las plantas de Jayuya y Aibonito, la sentencia dictada por este Tribunal *crea la errónea impresión de que esos eran los únicos productos que se manufacturaban en Carolina*, y por consiguiente, que la llamada consolidación de operaciones consistió solamente en transferir dicha operación a Jayuya y a Aibonito, sin más. Esto hace más viable una conclusión en el sentido de que no hubo un verdadero cierre, sino meramente un traslado de lo que se hacía en Carolina a otros dos pueblos de la Isla, en perjuicio de los empleados que laboraban en la planta de Carolina.

Lo cierto es que la producción de bolsas de soluciones intravenosas y sus tubos, como vimos, *era solamente uno de los productos que se manufacturaban en la planta de Carolina*; los otros productos se trasladaron a plantas a Estados Unidos o se descontinuó su producción, precisamente porque se cerraba la planta de Carolina como resultado de una decisión corporativa para maximizar su competitividad. De ahí la importancia de enfrentarse al cuadro completo de los eventos que conllevó el proceso de consolidación de las operaciones de Baxter en Puerto Rico para mejorar su competitividad. El no hacerlo, le impide al Tribunal justipreciar adecuadamente la decisión de negocios que tomó la compañía y cómo con ésta se pretendió reducir costos consolidando operaciones.

En esencia, lo que hace el Tribunal en su sentencia es penalizar a Baxter por haber optado por transferir una parte de su operación a otras plantas aquí en Puerto Rico, en vez de transferirla a Estados Unidos. Esto último presumiblemente, y ateniéndonos a la lógica del Tribunal, no la hubiese expuesto a una reclamación de que la compañía violentaba Ley Núm. 80. No podemos suscribir este resultado.

Por otro lado, el Tribunal estima que para que se dé en efecto un cierre conforme lo dispuesto en la Ley Núm. 80

que pueda constituir justa causa para la cesantía de empleados, se requiere "que el patrono *descontinúe de una forma absoluta las operaciones del negocio*". (Énfasis en original.) Sentencia de 30 de junio de 2005, pág. 21. Esta interpretación es resultado de un análisis de miras cortas, pues no tomó en cuenta en su completa dimensión las medidas tomadas por Baxter en Puerto Rico.

Además, estimamos que de la sentencia dictada por el Tribunal no queda claro a qué se refiere la mayoría cuando indica que para que ocurra un cierre en el contexto de la Ley Núm. 80 hay que descontinuar "de una forma absoluta las operaciones del negocio". ¿A qué operaciones de negocio se refiere el Tribunal? ¿Se refiere a las de Baxter como compañía multinacional sita en Puerto Rico que tiene negocios en la Isla? O, por el contrario, ¿se refiere a la operación y producción de un producto dentro de una misma fábrica operada por Baxter o cualquier compañía que se encuentre en igual situación? Si el Tribunal se refiere a lo último, ¿quiere ello decir que "el cierre" sólo ocurre si se deja de producir o descontinuar totalmente el producto en Puerto Rico? Lo resuelto en el caso de epígrafe apunta a que la respuesta del Tribunal es en la afirmativa. No parece, sin embargo, que ello fuera lo que se contempló en la Ley Núm. 80.

La interpretación adoptada por la mayoría de este Tribunal tiene el efecto real de hacer del Art. 2 de la Ley Núm. 80 (29 L.P.R.A. sec. 185b), que reconoce como justa causa para el despido de un empleado el cierre total, parcial o temporero de un establecimiento, letra muerta. Esta interpretación, además, arroja un velo de incertidumbre sobre las medidas que puede tomar una compañía para afrontar los retos de una economía cada vez más globalizada y competitiva. *En efecto, en este caso el Tribunal ha dispuesto mediante fíat judicial que no es justa causa para el cierre de un establecimiento la necesidad de consolidar operaciones para reducir gastos y poder mantener su competitividad en una economía globalizada.*

Finalmente, no podemos concluir sin expresar que es insostenible imponerle a Baxter el pago de la mesada que contempla la Ley Núm. 80 a los demandantes, *sin considerar el pago voluntario que* ya ésta efectuó cuando *éstos fueron cesanteados.* Si el pago de la mesada es la única indemnización a que tiene derecho un empleado que ha sido despedido injustificadamente, cómo se puede justificar un pago que supondrá, realmente, una segunda mesada. A lo sumo, este Tribunal debió haber ordenado al Tribunal de Primera Instancia auscultar la naturaleza y la cuantía del pago recibido por los demandantes para determinar si procede acreditarlo a la mesada que ordena la Ley Núm. 80. Así, si el monto de la mesada asciende a una cantidad igual o mayor a la ya recibida por el empleado de Baxter, la compañía no está obligada a efectuar un pago adicional. Si por el contrario, el monto de la mesada que contempla la Ley Núm. 80 es mayor al pago recibido, sólo procederá abonar la diferencia. De lo contrario, la decisión del Tribunal se revela de carácter punitivo, lo que a nuestro juicio no se justifica.

Por las razones antes mencionadas, disiento de la decisión que ha tomado una mayoría de los miembros de este Tribunal en el caso de epígrafe, de rehusar la reconsideración de su dictamen. Reconsideraría y desestimaría la demanda instada en este caso.

— O —

Voto particular de conformidad emitido, en etapa de reconsideración, por el Juez Asociado Señor Rivera Pérez.

En la opinión disidente del caso de epígrafe, la Jueza Asociada Señora Rodríguez Rodríguez señala que los motivos que la inspiraron a circular su ponencia están sostenidos por evidencia incontrovertible, la cual consta en autos

y fue obviada por el Tribunal en su sentencia. No compartimos su criterio. Aclaramos nuestro voto.

La Jueza Asociada Señora Rodríguez Rodríguez señala varios asuntos que supuestamente no tomó en consideración el Tribunal al dictar la referida sentencia. Disiente de la determinación del Tribunal de que no hubo un cierre de operaciones de la planta de Baxter en Carolina, sino un traslado de éstas a las plantas de Baxter en Jayuya y Aibonito. Señala que surge del expediente de autos que lo que se trasladó de la planta de Baxter de Carolina a otras plantas de la compañía en Puerto Rico fue sólo parte de los productos que se fabricaban y que el resto se trasladó a Estados Unidos. Si bien es cierto que surge del expediente que la operación de algunos productos se trasladó a plantas de Baxter en Estados Unidos y no dentro de Puerto Rico, *el Tribunal de Primera Instancia, luego de apreciar toda la prueba que le fue presentada, determinó que la producción de la compañía de Carolina se trasladó casi completamente a las plantas de Aibonito y Jayuya.*([1])

Tal como señalamos en la sentencia dictada, el Tribunal de Primera Instancia dictaminó correctamente que los demandantes sí tenían derecho, bajo las disposiciones de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185b), a ser compensados con la debida indemnización. Ese tribunal determinó, como cuestión de hecho, lo siguiente:

> ... los documentos y declaraciones de la propia parte demandada, a través de múltiples informes corporativos, memorandos, cartas y la deposición de Aracelis Centeno, oficial de Baxter-PR y anterior Directora de Personal de la Planta de Carolina, hacen inevitable la conclusión de que sobre los hechos medulares en torno las actuaciones de la demandada a la luz de la Ley 80, no hay controversia. Los hechos materiales que no están en controversia establecen: (1) la unidad de operaciones de las distintas plantas de Baxter en Puerto Rico, particularmente entre las plantas de Carolina, Aibonito y Jayuya ("I.V. Systems") y particularmente en cuanto al manejo

---

([1]) Apéndice, págs. 1406–1407.

de sus recursos humanos; (2) que la planta de Carolina era la más antigua de Baxter en Puerto Rico y que los demandantes eran, en su mayoría, los más antiguos de la empresa; (3) *que la producción en la cual laboraban los demandantes no se suspendió, sino que se trasladó casi completamente a las plantas de Baxter en Aibonito y Jayuya*; y (4) que a los demandantes, no se les ofreció traslados a sus puestos en las plantas de Baxter de Aibonito y Jayuya, sino que la empresa reclutó nuevo personal para realizar las tareas que éstos antes realizaban. (Énfasis suplido.)(²)

La prueba considerada por el foro primario y por este Foro incluye, tal y como expresó el Tribunal en su sentencia, un boletín informativo de Baxter del 19 de octubre de 1995, mediante el cual anunció el alegado cierre de operaciones de la planta de Carolina. En éste se expresó, en lo pertinente, lo siguiente:

As part of the consolidation announced today, *the company will transfer most of the production from its IV-solutions plant in Carolina, Puerto Rico, to another Baxter facility in Jayuya, which will be expanded to accommodate the move.* About 750 employees work at the Carolina plant, which will be phased down and closed by the end of 1997 or early in 1998. (Énfasis suplido.)(³)

Al evaluar la evidencia desfilada ante sí, el Tribunal de Primera Instancia realizó sus determinaciones de hechos. Examinamos la prueba que consta en nuestro expediente, junto con las determinaciones de hechos del foro primario, y concluimos que su dictamen fue correcto. No podemos intervenir con la evaluación y las determinaciones de hechos que de toda la prueba presentada hizo el foro primario. Es norma reiterada que le debemos deferencia a la apreciación de la evidencia que realiza el Tribunal de

---

(²) Íd.

(³) Apéndice, pág. 274. También, véase L.E. Ruaño, *Baxter Expands in Jayuya*, en *Caribbean Business*, 16 de julio de 1998, pág. 6, Apéndice, pág. 688. Este artículo, en lo pertinente, dispone: "[Eladio] Alvarez [Baxter General Manager] said[:] About 90% of production from Baxter's recently closed plant in Carolina was relocated to Jayuya. The rest was sent to other Baxter plants throughout the island, including Aibonito."

Primera Instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba.[4] Ninguna de esas circunstancias está presente, de manera que nos permita intervenir con las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. A base de ello, resolvimos que no hubo un cierre de las operaciones que estuvieron ubicadas en la planta de Baxter de Carolina, sino un traslado de la *mayor parte de esas operaciones* a las plantas de Jayuya y Aibonito. Por lo cual, concluimos que el despido de los peticionarios fue injustificado por ser los empleados de mayor antigüedad de Baxter, que realiza negocios en Puerto Rico con unidad de operaciones entre sus plantas, respecto a sus recursos humanos.

La opinión disidente de la Jueza Asociada Señora Rodríguez Rodríguez expresa que sorprendentemente no hicimos referencia en la sentencia "al cierre del almacén en Sabana Gardens en Carolina y a la venta de las operaciones Baxter en Culebra". Estos datos sí surgen de nuestro expediente, mas no hicimos hincapié en ellos porque entendíamos que aunque fuesen parte de una estrategia de negocios para reducir gastos, no justifican el despido de los empleados de la planta de Carolina, que eran los más antiguos en la empresa, ni provee dato alguno que altere la determinación que este Tribunal entendió como correcta a los efectos de que se trataba de un traslado de operaciones de la planta de Baxter de Carolina a otras dentro de Puerto Rico. Es necesario puntualizar que el Tribunal de Primera Instancia determinó, como cuestión de hecho, que existía unidad de operaciones de las distintas plantas Baxter de Puerto Rico, particularmente en cuanto al manejo de sus recursos humanos.[5]

En la referida opinión se hace referencia a un pago voluntario que supuestamente Baxter entregó a todos los em-

---

[4] *Álvarez v. Rivera*, 165 D.P.R. 1 (2005); *Rodríguez v. Pérez*, 164 D.P.R. 368 (2005).

[5] Apéndice, pág. 1406.

pleados cesanteados en carácter de una compensación voluntaria.([6]) Señala que debimos ordenar al Tribunal de Primera Instancia auscultar la naturaleza y cuantía de este pago para determinar si procede acreditarlo como mesada.

Respecto a la mencionada compensación voluntaria, debemos señalar que ésta no es una mesada sino una compensación que la compañía Baxter, como parte de su política interna, puede conceder. No obstante, esta compensación voluntaria concedida no releva a Baxter, como patrono, de cumplir con la indemnización que la ley exige que se conceda en casos de despidos injustificados. Esta compensación, en caso de que los peticionarios la hayan aceptado, no sustituye la mesada correspondiente. El Tribunal de Primera Instancia desestimó la acción de varios demandantes por éstos haber otorgado con Baxter un acuerdo y relevo general.([7]) No surge de nuestro expediente que los peticionarios hayan otorgado con Baxter tal acuerdo.

---

([6]) Íd., págs. 283 y 303. Baxter anuncia la aprobación de este pago a los empleados cesanteados mediante varios de sus boletines oficiales. En síntesis, alegaba, respecto a este pago, que era voluntario, pues Baxter no estaba obligado por ley a indemnizar a sus empleados.

([7]) Íd., págs. 135 y 1458. Véanse también los acuerdos de relevo que constan en el Apéndice, págs. 72–90, 755, 762, 774 y 782.