La Jueza Asociada Señora Rodríguez Rodríguez
emitió la opinión del Tribunal.
El recurso de epígrafe nos brinda la oportunidad de examinar los Arts. 1358-1361 del Código Civil de Puerto Rico, 31 L.P.R.A. sees. 3818-3821, en cuanto reglamentan el problema de la cabida en la compraventa inmobiliaria. Debemos precisar el alcance de dichos artículos y su relación con las acciones de reivindicación y deslinde.
Resolvemos, entre otras cosas, que estos Arts. 1358-1361 reglamentan la discrepancia debida al error entre la cabida de los inmuebles pactados en una compraventa y su real cabida. También aclaramos que la reducción del precio obtenida al amparo de dichos artículos no impide necesa *148 riamente la posterior acción reivindicatoría que pretenda el comprador.
H-1
Awilda Soto Padilla y Ferdinand Morales (Soto-Morales) solicitan una determinación de que cierta demanda presentada en su contra debió desestimarse sumariamente.
Los peticionarios y demandados, Soto-Morales, compraron y adquirieron de Salvatierra Development, el 25 de febrero de 1988 y mediante la Escritura Pública Núm. 59 otorgada ante el notario Rubén Rivera Vera, una residencia en el Núm. E-6 de la urbanización Salvatierra de San Lorenzo. Dicho instrumento contiene la descripción del inmueble siguiente:
URBANA: Solar Número Seis (6) del Bloque “E” de la urbanización SALVATIERRA ... compuesto de [450 metros cuadrados], en lindes por el Norte, con el solar número E~ Cinco (E-5) de la misma urbanización en una distancia de treinta metros lineales (30.00); por el Sur, con el solar E-Siete (E-7) de la misma urbanización, en una distancia de treinta metros lineales (30.00); por el Este, con la calle número dos (2) de la misma urbanización en una distancia de quince metros lineales (15.00); y por el Oeste, con el solar número E-Once (E-ll), en una distancia de quince metros lineales (15.00). CONSTA INSCRITO al folio 25 del tomo 227 de San Lorenzo, finca número 11,854.
El precio de compraventa fue $42,000. Apéndice de la Petición de Certiorari (Apéndice I), págs. 13-18.(1)
Mediante escritura pública de 31 de enero de 1995, que fue la Núm. 45 otorgada ante el notario Benjamín Rodríguez Ramón, la recurrida Marilú Ramírez Quiñones compró y adquirió de Future Lands Developers, Inc. el referido *149 solar E-5 de la urbanización Salvatierra. Se describió el inmueble así:
URBANA: Solar número Cinco (5) del Bloque “E” de la Urbanización Salvatierra ... compuesto de [450 metros cuadrados], en lindes por el Norte, con la calle Número dos (2), en una distancia de Quince Metros (15.00); por el Sur, con el Solar E-12, en una distancia de Quince Metros (15.00m.); por el Este, con el Solar E-6, en una distancia de Treinta Metros (30.00 m.); y por el Oeste, con el Solar E-4, en una distancia de Treinta Metros (30.00 m.).
Consta inscrito al folio 20 del tomo 22 de San Lorenzo, finca número 11,853. Apéndice I, pág. 44.
También surge de la escritura, inter alia, que la “compraventa se efectúa por el convenido y ajustado precio de ... $59,825.00”; que la propiedad se vendió y transmitió “con todo lo que le es anejo y le forme parte, con todos sus derechos, edificaciones y accesiones, y en las condiciones en que dicha propiedad se encuentra, o sea en ‘as-is conditions’ que la vendedora se obligó al saneamiento por eviction, y que la vendedora había adquirido el inmueble mediante una venta judicial. Apéndice del Memorando en oposición a expedición de certiorari (Apéndice II), págs. 36-41.
El mismo 31 de enero de 1995 la señora Ramírez Quiñones hizo una declaración jurada de los hechos siguientes: que había adquirido mediante compraventa la residencia E-5 de la Urbanización Salvatierra; que el precio pactado originalmente era $60,455, y que la vendedora le hizo una rebaja de $630, “por razón de que existe una merma en la cabida del solar de Veintiún Metros Cuadrados (21.00 m/c)”, por lo cual el precio de compraventa fue $59,825. Luego expresó que, debido a esta rebaja, no tenía reclamación que formular contra la vendedora por disminución de cabida, pero se reservó “el derecho a reclamar contra cualquier colindante que le haya usurpado el número de me *150 tros de terreno que representa la merma antes mencionada”. Apéndice I, pág. 20.
Así las cosas, Marilú Ramírez Quiñones, Juan Feliz Delgado y la Sociedad Legal de Gananciales compuesta entre ellos (Ramírez-Delgado), presentaron una demanda contra los peticionarios, Soto-Morales, el 27 de mayo de 2004. Solicitaron que el tribunal “[o]rdene la remoción de la verja mal colocada y la construcción de la verja en la colindancia”. Apéndice I, págs. 56-57.(2)
Los peticionarios contestaron la demanda y presentaron luego urna Moción en Solicitud de Sentencia Sumaria. En ésta alegaron que no existía controversia con respecto a los hechos relevantes.(3) Adujeron que, tratándose de una venta por unidad de medida o número, el Art. 1358 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3818, impedía que la demandante Ramírez Quiñones recuperara de sus colindantes los 21 metros cuadrados, pues al aceptar una reducción en el precio pactado, la recurrida “pagó por los metros que tiene en su solar”. Apéndice I, págs. 8-11. Añadieron que, tratándose de una acción reivindicatoría, procedía su desestimación porque los demandantes carecen de título y los demandados “han poseído pública, pacífica y en concepto de dueño de terrenos dentro de sus linderos (ver *151 jas) por espacio de dieciséis (16) años”. Apéndice I, págs. 11-12.
El foro de instancia —con el beneficio de una réplica de los demandantes— declaró “no ha lugar” la referida moción. Destacó en su orden que la demandante Ramírez Quiñones se había reservado el derecho de reclamar contra los colindantes y que existía una controversia sustancial de hecho sobre “si le peijudica a la demandada o no, la disminución de la cabida para la demandante”. Apéndice I, pág. 7.
Tras una moción de reconsideración, los peticionarios y demandados acudieron oportunamente al Tribunal de Apelaciones mediante un recurso de certiorari. El foro a quo denegó la expedición del auto solicitado. Expresó en su resolución, entre otras cosas, que el tribunal de instancia no incurrió en un abuso de discreción, pues resolvió correctamente que “hay controversia sobre si la disminución de cabida de 21 metros cuadrados que pretende la parte recurrida sobre el terreno propiedad de Soto Padilla y Morales efectivamente les puede peijudicar o no”. Apéndice I, págs. 75-87.
Insatisfechos con la resolución del foro intermedio, los demandados acudieron ante nosotros mediante un recurso de certiorari. Señalaron que “[e]rró el foro de instancia al negarse a dictar sentencia sumaria a favor de los peticionarios en el presente caso”. Emitimos a la parte demandante y recurrida una orden de mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la determinación del Tribunal de Apelaciones. Dicha parte compareció, por lo que estamos en posición de resolver y procedemos a hacerlo.
II
La controversia entre las partes se reduce a si los demandantes y recurridos tienen el dominio sobre determi *152 nado terreno. Su jurídica resolución exige un análisis del contrato de compraventa y de las acciones de deslinde y reivindicación. Comenzamos con la compraventa.
A. El dominio se adquiere de varias formas, entre ellas “por consecuencia de ciertos contratos mediante la tradición”. Art. 549 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 1931. Véase, también, el Art. 1048 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3012. El Código Civil establece así la consabida doctrina de título y modo.(4)
Si bien es título todo negocio jurídico obligacional que sirva de base para la transferencia de un derecho real, se destaca entre ellos la compraventa, que es un contrato consensual, oneroso y bilateral, cuyo propósito es servir de base para la transferencia del dominio sobre bienes muebles e inmuebles. Véanse: E. Vázquez Bote, Tratado teórico, práctico y crítico de derecho privado puertorriqueño, New Hampshire, Equity Publishing Company, 1992, T. IX, págs. 148-149; L. Díez-Picazo y A. Gullón, Sistema de Derecho Civil, 6ta.ed., Madrid, Ed. Tecnos, 1989, Vol. II, pág. 280; J. Castán Tobeñas, Derecho Civil español, común y foral, 12ma ed., Madrid, Ed. Reus, 1985, T. 4, págs. 65-66; J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. 2, págs. 122-123. Por supuesto, la doctrina de título y modo implica que una compraventa perfeccionada no basta para transferir el dominio, sino que genera obligaciones de carácter personal: la obligación del comprador de pagar y la del vendedor de entregar y sanear la cosa objeto del contrato, según los Arts. 1350 y 1389 del Código Civil de Puerto Rico, 31 L.P.R.A. sees. 3801 y 3871.
B. El propósito de la compraventa, que es la *153 transferencia del dominio, puede verse frustrado por varias razones, entre ellas el problema que atienden los Arts. 1358-1361 del Código Civil de Puerto Rico, 31 L.P.R.A. sees. 3818-3821 (Arts. 1358-1361). Éstos regulan, de forma dispositiva, la discrepancia debida al error entre la cabida o calidad pactada en una compraventa inmobiliaria y la cabida o calidad fáctica.
El propósito de los Arts. 1358-1361 es procurar la estabilidad de los contratos mediante reglas que suplen la intención de las partes. Hemos señalado, citando a Manresa, que dichos artículos responden a la función general de “procurar la estabilidad de los [contratos] sin merma de los derechos de nadie y sin invadir la esfera propia de la libre iniciativa de los contratantes”. (Énfasis suprimido.) B & W Investment v. Soc. de Gananciales, 104 D.P.R. 152, 159 (1975). Ello se logra mediante reglas cuyo contenido refleja una presunción sobre cuál hubiera sido la intención de los contratantes, presunción que deriva, en última instancia, de la equidad. íd. No empece la referencia al concepto de equidad, cabe subrayar que la tarea de los preceptos es remediar la ausencia de intención, no hacer equidad.
El texto de los Arts. 1358-1361 revela que atienden una discrepancia entre la cabida pactada y la que se ha entregado u ofrecido. Ahora bien, la doctrina española sugiere que dichos artículos aplican a una modalidad particular de esta discrepancia. Se trata de una divergencia entre la cabida pactada y la que realmente tiene el inmueble objeto del contrato. Tal discrepancia debe responder a un vicio del consentimiento por error y no, por ejemplo, a los cambios que pueda sufrir el objeto contractual debido al incumplimiento del vendedor.(5) G. García Cantero, Artículos 1.469-1.472, en M. Albaladejo, Comentarios al Código Civil y compilaciones forales, 2da ed., Madrid, Ed. Rev. *154 Der. Privado, 1991, T. XIX, págs. 237-238, 242, 259-260 (véase ahí también Artículo 1.468, pág. 230 n. 6); Diez-Picazo y Gullón, op. cit., págs. 293-294; Castán Tobeñas, op. cit., pág. 114; Q.M. Scaevola, Código Civil, 2da ed., Madrid, Ed. Reus, 1970, T. XXIII, Vol. 2, pág. 85; A. Madrid Parra, La cabida en la compraventa de bienes inmuebles, LIX (Núm. 554) Rev. Crít. Der. Inmob. 58, 65 (1983). De modo que se pretende suplir la intención de quien prestó su consentimiento pensando, erróneamente, que la cabida pactada coincidía con la cabida real del objeto contractual inmobiliario, vicio del consentimiento que se descubre, típicamente, a partir de la entrega hecha u ofrecida.
Dentro de su ámbito de aplicación, los Arts. 1358-1361 desplazan las normas generales del derecho contractual.(6) Surten, así, tres principales efectos. En primer lugar, eliminan los requisitos generales del error que resulta capaz de afectar la validez de un contrato o sus consecuencias. En segundo lugar, hacen inaplicable las consecuencias generales del vicio del consentimiento, al colocar en su lugar las normas que enumeramos más adelante. Por último, el Art. 1361 establece un plazo de seis meses(7) para los remedios establecidos en los Arts. 1358-1360.(8)
*155 Cabe destacar, finalmente, que los Arts. 1358-1361 son de carácter dispositivo y no imperativo. En B & W Investment v. Soc. de Gananciales, supra, pág. 159 esc. 3, citamos las expresiones del comentarista Badenes Gasset —El Contrato de Compraventa, Madrid, Ed. Tecnos, 1969, T. I, pág. 555— en cuanto a que estos artículos “ ‘pueden ser derogados por mutuo acuerdo de los contratantes, si bien el alcance de la derogación en caso de contienda será apreciado por los tribunales”. Véase J.M. Manresa y Navarro, Comentarios al Código Civil Español, 6ta ed., Madrid, Ed. Reus, 1969, T. X, Vol. 1, pág. 246. Es preciso añadir que la facultad de modificar o eliminar la normativa de los Arts. 1358-1361 cede en determinadas circunstancias ante el interés tutelado, que es la estabilidad de los contratos. B & W Investment v. Soc. de Gananciales, supra, págs. 157-158.
C. El primer párrafo del Art. 1358, supra, dis-pone que la obligación de entregar el objeto vendido incluye la de poner en poder del comprador todo lo que ex-presa el contrato, “mediante las reglas siguientes”. Luego, los Arts. 1358-1360 reglamentan la discrepancia de cabida según el tipo de compraventa. (9)
Tenemos, en primer lugar, la compraventa por unidad de medida o número. Ésta surge cuando las partes han establecido el precio total como consecuencia directa de la cabida, expresando el precio de cada unidad de medida o número así como la cabida total del inmueble *156 delimitado. García Cantero, op. cit., pág. 245; Diez-Picazo y Gullón, op. cit., Vol. II, pág. 293; Manresa, op. cit., pág. 175; Madrid Parra, op. cit., pág. 64-65.(10) Configurada este tipo de compraventa, las obligaciones de las partes quedan sujetas a los Arts. 1358 y 1359 del Código Civil de Puerto Rico, respectivamente. Establecen dichos preceptos, en apretada síntesis, que si al vendedor le resulta imposible entregar la cabida pactada, habrá una reducción o un aumento del precio, a menos que el comprador opte por rescindir el contrato debido a una merma igual o mayor de una décima parte de la cabida expresada o un aumento mayor de la vigésima parte de la cabida expresada. Puig Brutau, op. cit., T. II, Vol. 2, pág. 168; Manresa, op. cit., T. X, Vol. 1, págs. 240-244.
Existe, en segundo lugar, la venta a precio alzado. En ella “el comprador se obliga a pagar determinada cantidad de dinero por toda la cabida de un inmueble que resulte existir dentro de unos linderos ya establecidos en el contrato”. Rodríguez v. Pérez, 164 D.P.R. 368, 376 (2005). Véanse, además: Soc. de Gananciales v. Srio. de Justicia, 137 D.P.R. 70 (1994); Ruidíaz Barrios v. Salas, 103 D.P.R. 922 (1975).(11) Con respecto a las consecuencias de este contrato, pautadas en el Art. 1360 del Código Civil de Puerto Rico, supra, hemos indicado:
“[En] la venta por precio alzado, el vendedor tiene que ‘entregar la cosa cierta, que es la finca individualizada mediante la descripción de sus linderos. Todo lo que estos comprendan ha de ser entregado a cambio del precio convenido’.... El fundamento son los linderos, no un tanto por unidad de medida. Cualquier diferencia entre la cabida expresada y la que efec *157 tivamente tiene la finca, no da margen a reclamación o indemnización alguna.” (Enfasis suprimido.) Rodríguez v. Pérez, supra, pág. 376, citando a Soc. de Gananciales v. Srio. de Justicia, supra, pág. 75.(12)
III
Entre las acciones protectoras del dominio figuran la acción reivindicatoría y la de deslinde. Debemos explorar la distinción entre estas acciones y los criterios apropiados para realizar un deslinde.
A. Mediante la acción reivindicatoría, el propietario reclama su cosa de quien la tenga o posea. Debe identificar adecuadamente dicho objeto, probar que es suyo y probar que está indebidamente en posesión del demandado. Art. 280 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 1111; Pérez Cruz v. Fernández, 101 D.P.R. 365 (1973); Arce v. Díaz, 77 D.P.R. 624, 628-629 (1954). El segundo requisito implica que el demandante está obligado a probar su título y no puede descansar únicamente en los vicios que tenga el título del demandado. Castrillo v. Maldonado, 95 D.P.R. 885, 891-892 (1968); Sucn. Meléndez v. Almodóvar, 70 D.P.R. 527, 532 (1949). Cumplida esta obligación probatoria, corresponde al demandado señalar y probar su mejor título. Arce v. Díaz, supra, págs. 628-629, citando a Manresa y Navarro, op. cit, 1934, T. 3, pág. 138.
En cambio, la acción de deslinde tiene el propósito de determinar los linderos confundidos de dos heredades contiguas. Zalduondo v. Méndez, 74 D.P.R. 637, 641— *158 642 (1953). Es una acción disponible a “todos los propietarios cuyas propiedades limítrofes tienen confundidos sus linderos por causas naturales, accidentes fortuitos o actos voluntarios de tercero, debiendo concurrir todos a un solo juicio ...”. Arce v. Díaz, supra, págs. 627-628. Véase, además, el Art. 1319 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 1211. La acción es imprescriptible. Art. 1865 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5295. Además, el hecho de haberse intentado o practicado una acción de deslinde no impide que se vuelva a hacer, si existen nuevas causas que lo justifiquen. Zayas v. Autoridad de Tierras, 73 D.P.R. 897, 901 (1952).(13)
La distinción entre estas acciones ha suscitado varios criterios doctrinales.(14) Ahora bien, nuestra jurisprudencia establece los siguientes principios. Una sentencia reivindicatoría declara el derecho dominical del demandante y ordena que el demandado le entregue la posesión del objeto. La sentencia de deslinde, en cambio, tiene el único efecto de precisar las colindancias de determinados inmuebles. Dicha sentencia “no da ni quita derechos”. Zalduondo v. Méndez, supra, pág. 644; Zayas v. Autoridad de Tierras, supra, pág. 901; La O v. Rodríguez, 28 D.P.R. 636, 638 (1920).(15) Por eso es que no perjudica al *159 demandado la norma que impide litigar en el procedimiento de deslinde la prescripción adquisitiva de las partes. Zalduondo v. Méndez, supra, pág. 644.
Los principios expuestos revelan que la acción de deslinde tiene dos características distintivas. Una de ellas resulta evidente: el deslinde pretende individualizar los inmuebles, sin determinar directamente quién es su dueño. Por otro lado, en esta acción no se discute la validez ni la eficacia de los títulos, sino que se dirime su interpretación. Es en virtud de estas características que el deslinde “no da ni quita derechos”. Cuando el tribunal debe examinar la validez o eficacia de los títulos, o cuando el demandante solicita la posesión que corresponde a su dominio, estamos ante una acción reivindicatoría.
Es menester señalar, por último, que las acciones de reivindicación y deslinde pueden acumularse o instarse sucesivamente. Por ejemplo, el propietario que desea recuperar un terreno de su colindante podría solicitar el deslinde para identificar precisamente el terreno.
B. Los criterios apropiados para dirimir una acción de deslinde se enumeran en los Arts. 320 y 321 del Código Civil de Puerto Rico, 31 L.P.R.A. sees. 1212 y 1213. Resulta pertinente el primero de éstos, que dispone que “[e]l deslinde será en conformidad con los títulos de cada propietario, y a falta de títulos suficientes, por lo que resultare de la posesión en que estuvieren los colindantes”. 31 L.P.R.A. see. 1212.(16) Roca Juan acata el tenor literal de este precepto al explicar que se trata de una jerarquía de métodos de prueba, pues “aplicar el criterio de la posesión depende de que no haya títulos, o de que, aún habiéndolos, *160 sean insuficientes”. J. Roca Juan, Artículos 385 a 387, en Albaladejo, op. cit., pág. 506.
La preferencia por el deslinde según los títulos puntualiza el requisito de que sean “títulos suficientes”. Se discute en la doctrina española si la palabra “suficiente” exige un documento fehaciente. Indica Roca Juan que el Tribunal Supremo español ha rechazado tal condición y que exige únicamente que los títulos sean “suficientemente expresivos” para fijar la colindancia. Esto significa que deben contener datos capaces de determinar el límite o área perteneciente a cada propietario. Así, la insuficiencia de los títulos podría responder a que sus datos resultan incompletos o producen colindancias que son incompatibles con las circunstancias reales del terreno. Roca Juan, Artículos 385 a 387, en Albaladejo, op. cit., pág. 506.
C. La regla de que se practique el deslinde según los títulos luce más sencilla de lo que es, pues, evidentemente, los títulos de hoy reflejan las colindancias de ayer. Y es posible que un título haga referencia expresa o tácita a linderos de diferentes clases: accidentes naturales o artificiales, edificaciones o signos, líneas imaginarias contenidas en un documento, y las múltiples modalidades de todos éstos.(17) Surge así la pregunta de cuál es el tipo de lindero, identificado en un título, que será determinante de éste.
Aquí nuestra jurisprudencia revela un criterio flexible.(18) El caso Soc. de Gananciales v. Srio. de Justicia, supra, ilustra el énfasis en los linderos materiales. En 1924, el titular de una finca levantó e inscribió en el Registro de la Propiedad un plano que hacía constar su cabida de 243.639 cuerdas y colindancia sur con terrenos de la *161 Guánica Céntrale. La finca tuvo otros dos titulares antes de llegar a los demandantes, en 1952, mediante una compraventa a precio alzado. Este contrato expresó que la finca contaba con 243.639 cuerdas y colindaba por el sur “con los [terrenos] de Guánica Céntrale antes, hoy Departamento Forestal de Puerto Rico”. Existía al perfeccionarse dicha compraventa una verja que marcaba la referida colindancia. No obstante, los demandantes realizaron una mensura en 1985 y descubrieron que, según la cabida ex-presada en el plano de 1924, la ubicación de dicha verja había causado una merma de 9.1365 cuerdas.
Trabada la controversia eventualmente como un pleito de reivindicación, el foro de instancia dio entera credibilidad al plano de 1924, con su método de mensura, y resolvió a favor de los demandantes. Al revocar, indicamos que el vendedor había entregado a los Negroni-Carlo “la totalidad del terreno incluido dentro de los lindes señalados en la compraventa”, ya que al perfeccionarse y consumarse el contrato, existía ya una verja que marcaba la colindancia. Soc. de Gananciales v. Srio. de Justicia, supra, pág. 76. Esto significaba que el inmueble objeto de dichos negocios jurídicos estaba delimitado en el sur por una colindancia material, circunstancia que privaba a los demandantes de título con respecto a las nueve cuerdas ubicadas al otro lado de la veija.
En cambio, el caso reciente Rodríguez v. Pérez, supra, ilustra la importancia de los linderos ideales. Pérez Torres había comprado un solar, donde sus arrendatarios edificaron ciertas estructuras. El vendedor y colindante, Rodríguez Medina, instó una acción de reivindicación alegando que las estructuras ocupaban un terreno dentro de su inmueble, dados los linderos del solar del demandado expresados en la escritura de compraventa. Este respondió que había comprado un terreno cercado a precio alzado y que, por ende, era suya toda el área así delimitada. Pero el foro de instancia había determinado que las partes tuvieron la *162 intención de realizar un negocio cuyo objeto era la finca con sus linderos instrumentales, no con los que marcaba la cerca. Por no hallar una razón suficiente para rechazar esta determinación, resolvimos a favor del demandante.
Al destacar la importancia del factor intencional, nuestra opinión en Rodríguez v. Pérez, supra, revela por qué es necesario un criterio flexible con respecto a la determinación de los linderos según los títulos. La interpretación de los contratos procura determinar cuál fue la voluntad común de las partes al perfeccionarse el contrato. Marcial v. Tomé, 144 D.P.R. 522, 537 (1997); Unisys v. Ramallo Brothers, 128 D.P.R. 842, 852-853 (1991); Ramírez, Segal & Látimer v. Rojo Rigual, 123 D.P.R. 161, 173-174 (1989); Carrillo Norat v. Camejo, 107 D.P.R. 132, 138 (1978); Merle v. West Bend Co., 97 D.P.R. 403, 409-410 (1969). Por ende, la conexión que establece el Código Civil entre los linderos y los títulos produce una sutil reciprocidad entre ambas figuras, reciprocidad que milita contra la aplicación de reglas formales y precisas como, por ejemplo, la de que un lindero material siempre prevalece sobre un lindero inmaterial.
IV
En el caso de autos, los peticionarios sostienen que procedía desestimar sumariamente la demanda incoada en su contra, debido a que los demandantes carecen de derecho sobre el terreno que reclaman.
A. Comenzamos nuestro análisis con un vistazo a los aspectos procesales de esta controversia. Al evaluar una solicitud de sentencia sumaria, o al revisar su adjudicación, la evidencia por utilizarse consiste en las declaraciones juradas y la prueba documental admisible que obren en autos, así como las alegaciones no controvertidas del demandante. Los hechos que surjan sin controversia de di *163 cha evidencia se consideran probados; los demás se consideran sólo para justificar la decisión de no dictar sentencia sumaria. Evaluada así la evidencia, el tribunal resolverá si procede dictar sentencia sumaria y, en tal caso, si la sentencia debe favorecer a la parte promovente o la opositora. Cabe recordar que se trata de un mecanismo discrecional y que ciertos litigios suelen ser inapropiados para éste, entre ellos los que exigen determinaciones de hechos sobre la intención de las partes. Véanse, e.g.: Asoc. Pesc. Pta. Figueras v. Pto. del Rey, 155 D.P.R. 906 (2001); Jusino et als. v. Walgreens, 155 D.P.R. 560 (2001); PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881 (1994); Medina v. M.S. & D. Química P.R., Inc., 135 D.P.R. 716 (1994).
Los hechos alegados y la súplica de la demanda que instaron los recurridos, Ramírez-Delgado, configuran una acción de deslinde y reivindicación. Específicamente, solicitaron que el Tribunal “[o]rdene la remoción de la verja mal colocada y la construcción de la verja en la colindancia”. Apéndice I, pág. 57. Exigen así que se precise la colindancia entre los solares E-5 y E-6, remedio indicativo de una acción de deslinde. No obstante, los demandantes solicitan la reubicación de una verja, sin alegar más derecho que su dominio, y los demandados han impugnado el título de los demandantes. Son éstas las características de una reivindicación.
En mérito de lo anterior, procedería dictar sentencia sumaria desestimatoria si la prueba estableciera incontrovertiblemente el incumplimiento con los requisitos de las acciones de deslinde y reivindicación. Por otro lado, procedería resolver sumariamente a favor de los demandantes si la prueba estableciera incontrovertiblemente que se han configurado los requisitos de ambas acciones.
B. Visto el marco procesal de este recurso, es menester precisar las controversias sustantivas por dirimir. Acabamos de indicar que la determinación impugnada debe evaluarse con miras a las acciones de deslinde y reivindica *164 ción. Con respecto al deslinde, la demanda de epígrafe cumple con los requisitos pertinentes.(19) Por ende, la primera interrogante es si el terreno reclamado ubica dentro del solar E-5, suponiéndose que son válidos y eficaces los títulos de las partes.
Con respecto a la acción de reivindicación, el único de los requisitos en controversia es el de titularidad.(20) Ciertamente, la demandante Ramírez Quiñones es dueña del solar E-5. Pero sostienen los peticionarios que su título obligacional sobre los 21 metros cuadrados es inválido. Aducen que si Ramírez Quiñones aceptó una reducción del precio de su solar, en vez de exigir toda la cabida o desistir del contrato, mal puede pretender que su título obligacional incluya los 21 metros cuadrados que reclama.(21) Son los méritos de este planteamiento la segunda controversia sustantiva por dirimir.
C. La primera pregunta es si los 21 metros reclamados pertenecen al solar E-5. Cabe subrayar, de entrada, que el criterio para dirimir la colindancia entre los solares E-5 y E-6 —en esta etapa de los procedimientos— es el de los títulos. El Art. 320 del Código Civil de Puerto Rico, supra, menciona dos modos de hacer el deslinde: según los títulos y según la posesión.(22) Sin embargo, hemos *165 visto que procede fijar los linderos según la posesión sólo cuando los títulos no son suficientemente expresivos. Resulta inapropiado hacer tal determinación en esta etapa de los procedimientos.(23)
En virtud de lo anterior, debemos examinar si los 21 metros reclamados pertenecen al solar E-5, según los títulos. Los peticionarios sostienen que la demandante Ramírez Quiñones sabía, al adquirir el solar, que la cabida era de 429 en vez de 450 metros cuadrados. Citan la declaración jurada que prestó dicha demandante. Petición de certiorari, pág. 9. De ello se infiere la intención de celebrar un negocio cuyo objeto fue el solar E-5 delimitado del solar E-6 por la verja hoy existente.
Sin embargo, no estamos convencidos de que las expresiones de Ramírez Quiñones revelen incontrovertiblemente una intención de limitar el alcance de su negocio jurídico a los 429 metros cuadrados, ni de que ello implique la voluntad de utilizar una verja como lindero. La declaración jurada indica, por un lado, que existía una merma de 21 metros cuadrados en la cabida del solar, pero alude, por otro lado, a la posibilidad de reclamar contra el colindante que hubiera usurpado ese terreno. Una interpretación coherente de tales expresiones es que contemplan la posibilidad de que una reducción en la cabida fáctica del solar hubiera alterado sus linderos jurídicos, no la certeza de ello. Así interpretada, la declaración revela simplemente que Ramírez Quiñones asumió el riesgo y el costo de litigar la merma de cabida.
D. Llegamos entonces al argumento principal de los peticionarios. Sostienen que el título obligacional de la de *166 mandante Ramírez Quiñones es inválido, con relación al terreno reclamado, porque ella recibió una reducción en el precio de compraventa proporcional a la falta de cabida.(24) Su planteamiento contiene dos premisas medulares: (1) la compraventa de la demandante está sujeta al Art. 1358; (2) éste no permite que el comprador reciba una reducción proporcional del precio y luego exija la cabida pactada de los colindantes. Veamos.
1. Conforme la prueba que consta en autos, no cabe resolver, en esta etapa, si la compraventa de la demandante Ramírez Quiñones está sujeta a los referidos Arts. 1358-1361.(25) Dichos preceptos suplen la intención de quien prestó su consentimiento pensando, erróneamente, que la cabida pactada coincidía con la cabida real del objeto contractual inmobiliario. Veamos si se configuró tal situación.
Los autos no permiten la determinación de que hubo una discrepancia entre la cabida pactada y la real cabida. Estos sugieren que los solares E-5 y E-6 surgieron a la vida con 450 metros cuadrados. Véanse los documentos marcados “Plot Plan”, Apéndice I, págs. 72-73, y las escrituras de compraventa. No se ha probado incontrovertiblemente que la cabida del solar E-5 hubiera variado antes de la adquisición o durante el interinato de Future Land Developers, entidad que lo vendió a Ramírez Quiñones. Esto revela la posibilidad de que los 21 metros cuadrados reclamados eran parte del solar E-5 al perfeccionarse dicha compraventa, la cual, hemos indicado, posiblemente tuvo por objeto un solar cuyos linderos incluyen ese terreno. De ser así, no habría una discrepancia entre la cabida real y la cabida pactada.
Aún si hubiera una discrepancia, los autos no permiten *167 la determinación de que hubo error. Por un lado, la declaración jurada de Ramírez Quiñones podría interpretarse en el sentido de que ésta conocía la discrepancia al otorgar la escritura de compraventa. Por otro lado, no está claro cuándo se perfeccionó el contrato de compraventa original, ni su relación jurídica con dicha escritura, ni los linderos del solar objeto de ese primer contrato, etc. Recuérdese que, según la declaración, aparentemente hubo un contrato perfeccionado con anterioridad al otorgamiento de la escritura pública. Tales interrogantes podrían afectar la determinación de si estamos ante un supuesto de error como vicio del consentimiento.
2. Los peticionarios sostienen que el comprador no puede recibir una reducción del precio, conforme el Art. 1358, y luego exigir de los colindantes la cabida pactada. Arguyen, en particular, que al aceptar una reducción del precio pactado, proporcional a la falta de cabida, la demandante y recurrida pagó por 429 metros cuadrados en vez de 450, y carece, así, de un negocio jurídico obligacional que justifique la transferencia de los restantes metros. No les asiste la razón. (26)
Los peticionarios no citan autoridad jurídica alguna para apoyar su tesis de que una reducción del precio impide la posterior acción reivindicatoria.(27) Y es que la tarea de los Arts. 1358-1361 no es hacer equidad, procurando una justa correspondencia entre lo pagado y lo recibido. Su *168 función es suplir la falta de intención debida al vicio del consentimiento por error. De hecho, la normativa en cuestión es de carácter dispositivo —en vez de imperativo— siempre que no se menoscabe el interés social en la estabilidad de los contratos. Las circunstancias de este caso no sugieren que sería contrario a dicho interés un pacto entre Ramírez Quiñones y su vendedora mediante el cual ésta pagó $630 y aquélla aceptó el riesgo y el costo de reivindicar el terreno alegadamente usurpado.
V
Por los fundamentos antes expresados, expedimos el auto solicitado y confirmamos la resolución del Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para ulteriores procedimientos compatibles con esta opinión.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López disintió sin opinión escrita. El Juez Asociado Señor Rivera Pérez no intervino.

 Observamos que la copia en autos de la referida escritura está incompleta, pues falta su página 6 (de aparentemente siete páginas).

 Los demandantes alegaron, inter alia, que habían tenido problemas con la colindancia entre los dos solares; que la controversia había provocado innumerables vistas en los tribunales; que los demandantes habían denunciado a los demandados por alteración a la paz y amenaza; que dicho pleito terminó con una “transacción” para que las denuncias se dejaran sin efecto y se permitiera a los demandantes “medir y entonces levantar las veijas en el lugar donde correspondería la colindancia”; que hecha la agrimensura y al comenzar la remoción de la veija existente, comenzaron nuevamente los insultos, las amenazas y las visitas a los tribunales. Apéndice I, págs. 56-57.

 Específicamente, alegaron que no existía controversia sobre lo siguiente: la titularidad de las partes sobre los solares E-5 y E-6; sus descripciones regístrales; que la recurrida Ramírez Quiñones era consciente, al comprar el solar E-5, de que éste había sufrido una merma de 21 metros cuadrados en su cabida, y que dicha compradora aceptó y recibió del vendedor una reducción del precio de compraventa proporcional a la reducción de cabida. Estas aseveraciones las apoyaron con la referida declaración jurada de Ramírez Quiñones. Alegaron, también, que de “la propia descripción de la propiedad adquirida se desprende que la venta se realizó con ex-presión de la cabida del inmueble a razón de un precio por unidad de medida”.

 El título es un negocio jurídico obligacional que sirve de base para la transferencia de un derecho real. El modo o tradición es un traspaso posesorio cuya intención es transferir el dominio. L. Diez-Picazo y A. Gullón, Sistema de Derecho Civil, 2da ed., Madrid, Ed. Tecnos, 1981, Vol. III, pág. 77; J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1971, T. Ill, Vol. 1, pág. 340.

 Aquí conviene recordar que “ [e]l vendedor deberá entregar la cosa vendida en el estado en que se hallaba al perfeccionarse el contrato”. Art. 1357 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3817.

 Cabe enfatizar que el referido desplazamiento ocurre sólo cuando los Arts. 1358-Í361 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 3818-3821, rigen la cuestión. Por ejemplo, la doctrina no se expresa claramente sobre si los Arts. 1.469-1.472 del Código Civil español aplican a otros vicios del consentimiento, en particular al dolo. Véanse, e.g.: G. García Cantero, Artículos 1.469-1.472, en M. Albaladejo, Comentarios al Código Civil y compilaciones forales, 2da ed., Madrid, Ed. Rev. Der. Privado, 1991, T. XIX, págs. 238 y 242; L. Diez-Picazo y A. Gullón, Sistema de Derecho Civil, 6ta ed., Madrid, Ed. Tecnos, 1989, Vol. II, págs. 293-294. Asimismo, dado que los Arts. 1.469-1.472 suplen la intención contractual, Diez-Picazo y Gullón sostienen que “no puede por menos de ser relevante una voluntad expresa o tácita de dar relevancia a la cabida indicada en el contrato y, por tanto, a su inexactitud”. íd., pág. 294. No examinamos hoy tales asuntos.

 Los comentaristas del Código Civil español discuten si el plazo es de prescripción o caducidad, cuestión que no consideramos en esta opinión. B & W Investment v. Soc. de Gananciales, 104 D.P.R. 152, 155-156 (1975); Díez-Picazo y Gullón, op. cit., pág. 295; G. García Cantero, Artículos 1.469-1.472, en M. Albaladejo, Comentarios al Código Civil y compilaciones forales, 2da ed., Madrid, Ed. Rev. Der. Privado, 1991, T. XIX, pág. 260.

 La controversia de marras no exige que determinemos cuáles son los reme *155 dios sujetos al plazo. Según García Cantero, op. cit., págs. 259-260, por ejemplo, se trata de las acciones de rescisión-anulación del contrato y reducción-aumento del precio, acciones éstas de carácter personal que competen a las partes o a sus herederos.

 A continuación se discuten las compraventas tipificadas en los Arts. 1358-1361 del Código Civil de Puerto Rico, 31 L.P.R.A. sees. 3818-3821 (Arts.1358-1361). La doctrina ha identificado otras que no consideramos, tales como la compraventa a medida y la compraventa sobre plano. Véase, e.g., Madrid Parra, op. cit., págs. 108-117.

 García Cantero, op. cit., pág. 245, señala, siguiendo el criterio de Albaladejo, que es posible expresar la cabida implícitamente cuando se indican el precio total y el de cada unidad de medida o número.

 Obsérvese que la expresión de la cabida del inmueble objeto de la compraventa no impide que ésta sea a precio alzado. Rodríguez v. Pérez, 164 D.P.R. 368 (2005); Soc. de Gananciales v. Srio. de Justicia, 137 D.P.R. 70 (1994); Ruidíaz Barrios v. Salas, 103 D.P.R. 922 (1975); Velázquez v. Velázquez, 82 D.P.R. 619, 630 (1961); Colón v. Batis Olivera, 34 D.P.R. 648 (1925).

 Nótese que adjudicamos el recurso de epígrafe sin examinar el segundo párrafo del Art. 1360, supra, cuya infeliz redacción ha provocado desavenencias en la doctrina y la jurisprudencia. Véanse, e.g.: García Cantero, op. cit., págs. 257-258; Diez-Picazo y Gullón, op. cit., Yol. II, págs. 293-294; J. Castán Tobeñas, Derecho civil español, común y foral, 12ma ed., Madrid, Ed. Reus, 1985, T. 4, págs. Í16-117; Q.M. Scaevola, Código Civil, 2da ed., Madrid, Ed. Reus, Í970, T. XXIII, Vol. 2, págs. 81 y 88; J.M. Manresa y Navarro, Comentarios al Código Civil Español, 6ta ed., Madrid, Ed. Reus, 1969, T. X, Vol. 1, págs. 248-252; Madrid Parra, op. cit., págs. 98-99 y 103-104; Soc. de Gananciales v. Srio. de Justicia, supra, pág. 76; Rosa Valentín v. Vázquez Lozada, 103 D.P.R. 796, 803-804 (1975).

 Indicamos en Zalduondo v. Méndez, 74 D.P.R. 637, 641 (1953), que una demanda de deslinde debía alegar: “(1) la descripción de la propiedad; (2) el interés que la parte reclame tener en ella; (3) [el] nombre de la persona en posesión de la propiedad; (4) la razón por la cual se solicita el deslinde; y (5) el requerimiento hecho a la otra parte y la negativa de ésta.” Obsérvese que estos requisitos surgían de la Regla 34(b) de las derogadas Reglas de Enjuiciamiento Civil. Ahora bien, los demandantes de epígrafe han cumplido con los requisitos enumerados —ello les confiere legitimación activa— y no se ha planteado que las Reglas de Procedimiento Civil de 1979 establecen requisitos distintos. Esto significa que no hay necesidad de precisar los requisitos especiales, si alguno, para solicitar el deslinde, más allá de los que surgen del Código Civil.

 Véanse: Diez-Picazo y Gullón, op. cit.; V.L. Montés Penadés, Artículos 348y 349, en M. Albaladejo, Comentarios al Código Civil y compilaciones forales, 2da ed., Madrid, Ed. Rev. Der. Privado, 1990, T. V, Vol. 1, págs. 221-226; J. Roca Juan, Artículo 384, en M. Albaladejo, op. cit., págs. 495-501.

 En La O v. Rodríguez, 28 D.P.R. 636, 638 (1920), explicamos: “El deslinde ... no da ni quita derechos; deja intactas las cuestiones de posesión y propiedad y sólo sirve para el fin a que se dirige, esto es, para aclarar y fijar la división y límites de las *159 heredades, evitar que se confundan o desaparezcan los antiguos linderos y prevenir los pleitos que de tal confusión pudieran originarse en lo sucesivo.” (Cita omitida.)

 El concepto título aquí utilizado incluye tanto el título obligacional como la tradición. Sin embargo, el recurso de autos no presenta una controversia genuina con respecto al segundo elemento.

 Sobre los modos de delimitar los inmuebles, véase Roca Juan, Artículo 384, en Albaladejo, op. cit., págs. 479-480.

 Además de los casos discutidos a continuación, véanse, por ejemplo: Almodovar v. Nolla, 85 D.P.R. 771 (1962); Velázquez v. Velázquez, supra; Colón v. Batís Olivera, supra; King v. Fernández et al., 30 D.P.R. 592 (1922).

 Específicamente, se describen ios solares E-5 y E-6, se indica el interés que tienen los demandantes en dichos solares, se incluyen los nombres de quienes poseen el solar E-6, se explica que el deslinde resulta necesario debido a frecuentes disputas sobre la colindancia, y se alega que los demandados han desatendido los requerimientos de deslinde. Nada sugiere que haya controversia sobre estos hechos.

 La precisa identificación del terreno es innecesaria en esta etapa de los procedimientos; basta precisar la colindancia y solicitar el deslinde. Con relación al tercer requisito, nada sugiere que los peticionarios tengan derecho a poseer el terreno disputado, a no ser que les pertenezca (por ejemplo, no son arrendatarios).

 Los peticionarios también alegan su mejor título —aún suponiendo que el terreno reclamado ubique dentro del solar E-5— pues lo han adquirido mediante la usucapión. Sin embargo, no han probado incontrovertiblemente los requisitos pertinentes.

 La selección del criterio es medular. Los demandantes reclaman un terreno que alegadamente ubica en su solar. El terreno está en posesión civil de los demandados. Específicamente, surge de los autos que, por más de un año, ha existido una verja cuyo efecto es excluir ese terreno del solar E-5 e incorporarlo al solar E-6. *165 Por ende, si el criterio determinante de la ubicación del terreno fuera la posesión, procedería desestimar sumariamente la demanda.

 El requisito aludido podría configurarse en el caso de autos. Obsérvese, por ejemplo, que resultan contradictorios los linderos expresados en las dos escrituras de compraventa. No obstante, la determinación de si los títulos son suficientemente expresivos podría verse afectada por la evidencia que en su día presenten las partes, dadas las interrogantes que luego identificaremos.

 Cabe observar que esta aseveración de los peticionarios resulta curiosa. La reducción en cabida de 21 metros cuadrados corresponde aproximadamente a 4.67% de los 450 metros cuadrados pactados, mientras que la rebaja de $630 corresponde aproximadamente a 1.04% de los $60,455 pactados.

 En virtud de este resultado, es innecesario examinar si el artículo aplicable a la controversia de autos sería el 1358 ó el 1360, supra.

 Nótese que esta tesis parte de una premisa cuyo mérito y alcance nos abstenemos de evaluar. Se aduce que Ramírez Quiñones no puede reivindicar porque recibió una reducción del precio. Esto nos da a entender que, según los peticionarios, la vendedora de Ramírez Quiñones podía instar una acción reivindicatoría. Pero los Arts. 1358-1361 aplican cuando surge por error una discrepancia entre la cabida pactada y la que realmente tiene el inmueble; además, sus remedios están condicionados a que el vendedor no pueda entregar lo pactado. Por ende, los peticionarios parten de una interpretación amplia con respecto a dicha discrepancia e imposibilidad, interpretación que permite su configuración aun cuando el vendedor era dueño, de todo lo que debía entregar.

 De hecho, la parte demandante en el caso Castrillo v. Maldonado, 95 D.P.R. 885 (1968), había adquirido el dominio de quien había otorgado un relevo más abarcador que el de autos. Sin embargo, no lo invocamos para sostener nuestra conclusión de que era improcedente la reivindicación.